Case number four for argument this morning is Smith v. Kleynerman. Mr. Robinson. May it please the court, Andrew Robinson appears on behalf of the creditor, appellant Scott Smith. This case is not a chicken or egg situation. This is a situation in which things must follow a specific order. When that order is followed, the case should be remanded to the bankruptcy court for further proceedings to determine whether the formula under section 522F of the bankruptcy code allows for the avoidance of Mr. Smith's lien. Instead of following that correct order, the bankruptcy court simultaneously reopened the bankruptcy case and avoided Mr. Smith's lien. The simultaneous reopening and avoidance cannot be the proper procedure if a creditor takes issue with the value of the asset that is the subject of the lien. Well, the critical question is what is the right time to dispute the $0 valuation of this asset? Is it on reopening or is it in the original bankruptcy proceeding? Why isn't this the kind of thing that has to be raised in the original bankruptcy proceeding before the discharge? The reason it's not an issue for the original bankruptcy is that Mr. Smith is a secured creditor in this case. But you're taking the position that secured creditors have no stake in the valuation of assets in a bankruptcy, and I find that extremely odd. Well, the reason for that, Your Honor, is because unless the debtor seeks to avoid the lien, the lien rides through the bankruptcy. But the debtor did seek to avoid the lien. The debtor valued that interest at $0 and claimed a $15,000 exemption against it. That is an effort to avoid any claim against that asset. That's just what it means to exert an exemption against a particular valuation. Respectfully, I disagree, Your Honor. That applies the rule of 4003B of the Bankruptcy Code instead of 4003D. Now, under 4003B applies to proceedings under 522L, which is the claiming of an exemption. And under that bankruptcy rule of 4003B, creditors, not secured creditors, but general creditors must object within 30 days of the meeting of the creditors. Now, under 4003D requires the movant to initiate the avoidance of a lien by motion pursuant to Rule 9014. Under 9014, the motion must be served no later than 7 days before the hearing on the motion. But I think maybe you're missing the point that Judge Easterbrook was making, which is another way, I mean, functionally another way you can avoid a lien is to say, you know, you have a lien on Blackacre, but Blackacre for some reason is worth zero. Maybe there's a toxic spill on it and it has negative value. And when he – the creditor, Mr. Smith, has known since the day this bankruptcy was filed that Mr. Kleinerman was evaluating this red flag cargo security systems interest at zero. He made no secret of it. It's there in the original filing. It's there in the amended Schedule C. It goes all the way through. And to take a position that you wait until after the discharge and after, you know, a lot of things have happened to suddenly appear and say, well, this is actually wrong. We've come up with all this other evidence. That was the wrong number. It just struck me as untimely. Well, it's the debtor's burden to seek the avoidance. And that's the basis of my question. Why isn't a zero valuation against a claim of a $15,000 exemption just a way of seeking the avoidance? Your client knew that this was happening in the bankruptcy. It wasn't as if he wasn't served. But unless the debtor actively seeks to avoid a lien and actively seeking to avoid a lien. You're missing the point of my question. My question is why isn't giving a valuation of an asset that is less than the claimed exemption a way of seeking to avoid a lien? Because the lien rides through even if the value of the asset is zero. You're just asserting the conclusion. You're not answering my question, which is why this isn't a way of avoiding, of seeking to avoid a lien. So maybe it would help if you just entertained for a moment the possibility that it really was zero value. I know you're contesting that, but suppose. Then there is no there there. There's nothing to which the lien can attach. But therein lies the problem of this case proceeding on that assumption that the value is zero. But it was open and available for anybody who thought that was a bad assumption. The trustee evaluates all of this. Mr. Kleinerman repeatedly puts this number down. It's all being done out in the open. Very true. But as this court explained in Inree Schoonover, a secured creditor in bankruptcy has the right to wait out the bankruptcy and enforce the lien at its conclusion unless the debtor asks the bankruptcy court for relief. Yeah, well, it goes back to my question. Why isn't that exactly what Kleinerman did by stating a valuation less than the worth of the exemption? Because, again. Is it a magic words argument? It's an understanding of a discharge as opposed to an avoidance. The lien attaches to the property itself. It doesn't tie itself to the debtor. Once the debtor obtains a discharge, he no longer personally is obligated to a creditor. However, the lien survives, and I believe the bankruptcy code and this court's previous findings are clear on that, that the lien survives. And as a secured creditor, they have the right to foreclose a lien that survives or passes through the bankruptcy. Now, does Mr. Kleinerman, when he obtains his discharge, is he personally obligated to my client? No. But the property remains subject to the debt because the lien has not been avoided. It's just like a mortgage case. A debtor files for bankruptcy seeking to forestall the foreclosure of their mortgage. They obtain a discharge, yet they don't have an ability to avoid the mortgage. Therefore, the bank still can pursue the property, the house, for the debt. They can't pursue the individual, but they can pursue the property for the debt. And that's the differentiation here. Now I'm completely lost because I thought the lien was on the distributions, not on Red Flag itself. It is on its purchase. So you're not pursuing the property now. Your effort was to pursue distributions from Red Flag. Which is a distribution is a payment on the equity value. In order to collect a debt that had been discharged. But it's on his property. It's on his interest in the company. But the debt had been discharged. Yes. The debt had been discharged. The company had been conclusively valued as worth nothing. As of the date of the petition. I mean, I get some sense that you're trying to get the valuation as of some different date. But the date of the petition is the correct date for the valuation of the underlying company. That is the correct date. However, there was no reason for my client to object to that previously. There was no reason for my client. We're back to asserting the conclusion. Well, but in the application, in the bankruptcy. Well, I'd like to reserve the remainder of my time. Certainly counsel. Thank you. Mr. Aspen. And you could begin. You won't like this question. By explaining why the $0 valuation was not transparent bankruptcy fraud. This is a company that had paid out hundreds of thousands of dollars to your client. It was obviously valuable to your client. That's the whole point of all of this. And yet it was valued at $0 in the bankruptcy. That looks like bankruptcy fraud to me. Me too. I actually wondered about this. We're here on appeal. What's the maybe? I mean, you don't have to answer this question. But the U.S. Attorney's Office would probably take some interest in this. I suspect the bankruptcy trustee would. Sure, your honors. And I think the issue with that question is we're essentially shadow boxing to try to answer it. There was never a timely. No, I can. I can understand your answer that that wouldn't help Mr. Kleiner. And your client hasn't been criminally prosecuted yet. But I don't see how a $0 valuation can go with anything like a straight face. Yes, your honor. The issue is there's no evidence in the record on that because there was never a timely objection to Mr. There is evidence in the record about the size of the payouts. There is evidence in the record about the fact that the parties are fighting even now about the value of Red Flag, which if it were worth nothing, I don't suppose your client would be fighting. Well, our position is that it was worth nothing as of the petition date. As your honors alluded to. And that it became valuable later. That's correct, your honor. For a variety of reasons. Well, a number of reasons. One reason was post-bankruptcy filing the debtor obtained a very valuable government contract, which greatly increased the company's revenues. There's also a variety of factors. And the only evidence in the record on this, because there was never a timely objection, is debtor's prior counsel's affidavit in the 2004 motion litigation. And if you look on page 24 of our brief, there's five or six bullet points that the debtor's prior counsel discussed with the trustee, whose job is to determine whether there's value with the debtor's assets. Well, that's right. I have the same questions my colleagues have, but also am curious as to why the trustee seems to have actively acquiesced in this $0 valuation. It's not just Mr. Kleinerman. Sure. And I think it's notable the trustee did appear in this litigation below. In the reopening litigation. In the reopening litigation and agreed with the debtor's value, despite any new evidence that has come out to value. And all I can point you to, because this is the only evidence in the record, is page 24 of our brief. This is the debtor's counsel's affidavit in the 2004 motion. This is the only evidence on value in the record because there was no other reason to have any evidence of value in the record. There was no objection made to the exemption. I can go through these bullet points one at a time, but these are the discussions that happen between debtor's counsel and a trustee. You go back and forth. Right. There's a closely held company here that had a right of first refusal in the operating agreement. Any involuntary sale of Kleinerman's membership interest would transfer only the economic rights, not the voting rights. Kleinerman had no non-compete with the company, so any buyer would have to reckon with that. As of the petition date, there was a secure creditor with a lien on all of Red Flag's assets. The underlying note for that lien was in default, so any buyer of this interest would be subject to a replevant action by that creditor. And finally, the government contract that I already referenced, if there was a transfer of interest in Red Flag, the controlling interest in Red Flag, that government contract could be voided. So I think you have to look at this in the context of what does value mean for a bankruptcy state. That means what— So maybe the whole problem is that, you know, had there been a timely proceeding, maybe $1—maybe $0 would have been rejected. It would have been a very different bankruptcy. That's absolutely right. This evidence would have been proffered, and the bankruptcy court could have made a decision on this. This could have been objected to at any point while the bankruptcy was pending. It also could have been, and under the Schooner case, should have been objected to. Pages 10 to 11 of Smith's reply brief said that he did try to gather the information in the bankruptcy to make a colorable objection to the valuation, but that the bankruptcy judge wouldn't let him. What's your response to that assertion? It just wasn't timely made. That was three months after the discharge, so the bankruptcy court's analysis was, if you made this objection shortly after the bankruptcy was filed, any creditor is entitled to take a 2004 exam and request this information. The trustee requested this information. The information was provided to the trustee. The trustee made an analysis and said, I can't sell this interest and red flag to a third party because of all these factors. Your argument is that's what led to the abandonment. Yes. This is the same analysis the trustee undertakes with any bankruptcy asset. I need a third party to buy this asset. If there's not a third party that's willing to buy it, it has no value to the bankruptcy estate. So it's the trustee's business judgment. Can I sell this asset for net of the costs of whatever the marketing and sale costs are, and will that net proceeds bring back some value to the bankruptcy estate? If the answer to that is no, then it's the trustee's duty to abandon the asset, which is exactly what happened here. There's no allegation that any of this information was withheld from the trustee, and it was provided to the trustee because he's the only one that made a timely request for it. And if I could just turn quickly to the motion to reopen. Under Section 350B of the Bankruptcy Code, a bankruptcy court may reopen a closed case to accord relief to the debtor. While you're talking about this, can you give us an update on what's happening in the Wisconsin Court of Appeals? It is still pending. And as far as potential mootness goes, if the Court of Appeals case is affirmed, then I think it would have no effect if the Court of Appeals case is reversed. And as part of that reversal, the charging order in dispute here is eliminated, and I think it could theoretically moot out this case. But it's been almost two years, and we still don't have a decision. Okay. Thank you. The Seventh Circuit has adopted the leading approach, which is to reopen bankruptcy cases to avoid the absent showing of prejudice to the debtor. In deciding whether to reopen a bankruptcy case, bankruptcy courts routinely analyze three factors, which are set out in Redmond v. Fifth Third Bank. One, the amount of time the case was closed. Two, whether the debtor is entitled to the substantive relief being sought. And three, the availability of other courts like state courts to adjudicate the debtor's claims. Factor one, this case was closed for less than 60 days. That's nowhere near the multi-year delays that other courts have found to be prejudicial. Two, the bankruptcy court correctly found that Mr. Smith's charging order lien could be eliminated pursuant to Section 522F of the Bankruptcy Code. And three, the availability of state courts. We tried that. We went to the state court. We requested an application for satisfaction of the judgment in order to eliminate the charging order lien. The state court denied us that. We were foreclosed. Shortly thereafter, when we realized this was our only remaining remedy, we filed the motion to reopen. And finally, despite there being no requirement to do so, the bankruptcy court required Kleinerman to reimburse Smith for all of his costs and fees in the state court litigation. That surely alleviated any prejudicial effect with the short delay in filing the motion to reopen. Finally, I just want to quickly run through the lien avoidance formula that the bankruptcy court applied here. There is no dispute that the charging order lien is a judicial lien subject to avoidance under 522F1A. The valuation date for an asset for purposes of determining whether it's exempt is as of the petition date. Here, the debtor scheduled his interest in red flag at zero. The court properly applied the undisputed facts to the lien avoidance formula set forth in 522F2A and found that Mr. Smith's charging order lien could be properly avoided. If the court has no other questions? Seeing none, thank you very much. Mr. Robinson, anything further? I'll start with the application of the Redmond test by the bankruptcy court, and specifically to Factor 2, which states whether the debtor could obtain the relief sought. I believe that's the misapplication here by the bankruptcy court, whether the debtor could obtain the relief sought. The use of the term could illustrates that there only needs to be a possibility that the debtor will obtain the relief sought, meaning it's possible that the valuation of the business was low enough to avoid the lien under the 522F test. However, we were never given the opportunity to dispute that zero value. Again, we sought information pursuant to a 2004 exam earlier in the bankruptcy. We were shut down at that point, and we were never given the opportunity. But exactly when? I mean, because your opponent has just said that you didn't pursue that until it was too late. What was the earliest time you actually went in and said, we would like a factual exploration of these matters? It was while the bankruptcy was still open and still pending. But when? It was after the creditor's meeting? It was after the creditor's meeting, and it was after the debtor had obtained the discharge. So after the discharge. After the discharge. So personally, he's not obligated. But again, it was before they had sought to avoid the lien. But it was after? Okay. Okay. And finally, I just want to reiterate that the debtor in this case was afforded way more than a fresh start. He filed a Chapter 7, essentially using this company as his personal piggy bank, and the state court information shows that he was routinely withdrawing $300,000 annually, both before, during, and after the bankruptcy. And the results of creditors excluding my client was a distribution of $14,407.06. With that, we request that you remand the case. Thank you. Thank you, Counsel. The case is taken under advisement.